(No. 21583.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE AMALGAMATED TRUST AND SAVINGS BANK, Appellant.

*Opinion filed December 23, 1932.*

ROBERT McCORMICK ADAMS, (BURKE WILLIAMSON, of counsel,) for appellant.

JOHN A. SWANSON, State's Attorney, LEE R. LAROCHELLE, WILLIAM B. WALRATH, SAMUEL F. BLOCK, and ELMER M. WALSH, (J. W. BRABNER-SMITH, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The People of the State of Illinois brought an action of debt in the circuit court of Cook county against the Amalgamated Trust and Savings Bank to recover $8763.72 taxes for the year 1930 assessed against the individual stockholders of the bank severally on their respective shares. The defendant pleaded *nil debet.* The cause was tried by the judge without a jury. The court found the issues for the plaintiff and rendered judgment against the defendant for the amount of the taxes, with penalty of one per cent a month from May 1, 1932, and costs. The defendant appealed.

The plaintiff introduced in evidence volume 149 of the original assessment roll. At the top of the first page of this volume was a heading consisting of the words, "Amalgamated Trust and Savings Bank of Chicago, Chicago, Illinois." No assessment or tax was carried out opposite this heading. Beneath the heading were listed the names of 224 stockholders of the bank, and carried out opposite the name of each stockholder was the number of the shares owned by him and the assessed valuation of such shares. At the conclusion of this list of stockholders appear the grand total number of shares, 2000, and the total of the assessed valuation of the shares held by the 224 stockholders, $130,000. The summary page of the assessment roll contained this entry:

| | Grand total full value— dollars | Total assessed value by Board of Assessors— dollars | Total assessed value as corrected by Board of Review— dollars |
| --- | --- | --- | --- |
| Amalgamated Trust and Savings Bank of Chicago, page 9 | 130,000 | 130,000 | 130,000 |

The defendant objected to the assessment roll and pointed out that under the declaration plaintiff was suing for general taxes levied against the defendant's personal property and that the assessment roll introduced showed on its face that it was an assessment against each of the defendant's stockholders upon the shares of the defendant's stock held by them, respectively. The court overruled the objection. The parties then stipulated that the assessment roll as made up showed the name of each of the defendant stockholders, the number of shares held by and the tax extended against each by the county clerk, the valuation as assessed and equalized by the State Tax Commission for 1930, $65 a share, the total number of shares (2000) pro-

ducing a total assessed valuation of $130,000. Taxes were extended at $6.74 a hundred dollars assessed valuation on the number of shares held by each stockholder, the total amount of the taxes extended against the stockholders being $8673.72. The valuation of $130,000 was arrived at by totaling the assessments against all of the stockholders. The defendant moved at the close of the plaintiff's case for a finding in its favor, and the motion was overruled.

The appellee insists that it is a well settled law that States have authority to levy a tax on stockholders, and that the tax may be collected from the bank itself instead of from the individual stockholders; that the bank acts as agent for its shareholders; that its duty under section 39 of the act for the assessment of property and for the levy and collection of taxes is to set aside a reserve for taxes, and that having set aside this reserve it is subject to suit in debt for that amount.

Sections 35 to 39, inclusive, of the Revenue act (Cahill's Stat. 1931, pp. 2321-22, pars. 40-44; Smith's Stat. 1931, pp. 2385-86, pars. 39-43;) provide that the stockholders of every kind of incorporated bank, whether organized under the Banking law of this State or of the United States, shall be assessed and taxed upon the value of their shares of stock therein in the county, town, district, village or city where such bank or banking association is located, whether such stockholders reside in such place or not. The method of ascertaining the value of the shares of stock is provided for and all shares are required to be listed and assessed as of April 1, annually. A full and correct list is required to be kept in each bank, at all times, of the names and residences of its stockholders and the number of shares held by each, which shall be subject to the inspection of the officers authorized to assess property for taxation, and the assessor is required to report to the county clerk a correct list of names and residences of all stockholders in any bank, with the number and assessed valuation of all shares

held by each stockholder. The county clerk is required to enter the value of such shares in the tax lists in the names of the owners and to compute taxes thereon the same as against the valuation of other property in the same locality.

In *Chicago Title and Trust Co.* v. *Central Trust Co.* 312 Ill. 396, at page 414, and *People* v. *Toluca State Bank,* 327 id. 638, at page 642, these sections were considered. In the former case the question was whether the Central Trust Company was liable for taxes assessed against the individual stockholders of the LaSalle Street National Bank, and in discussing the question of such liability we said: "For similar reasons mentioned in the preceding paragraph there is no liability of the Central Trust Company for the taxes assessed against the individual stockholders of the National Bank on their stock, amounting to $12,182.24. The National Bank, apparently as all other national banks usually do, was accustomed to pay the taxes of its stockholders on their National Bank stock. The reason for this custom in this State is apparent. By section 35 of our Revenue law the stockholders of the bank are personally assessed for their shares, and, of course, are primarily liable therefor and bound to pay the same. By section 39 of the Revenue act it is the duty of every bank and its managing officers or officer to retain so much of any dividend or dividends belonging to such stockholders as shall be necessary to pay taxes levied upon the stockholders' stock. The officers of the bank are personally made liable for these taxes if they do not conform to section 39 in paying the tax out of the stockholders' dividends. Accordingly the National Bank on October 21, 1912, carried an item in its liability account in this language: 'Reserved for taxes, $6000.' That sum was almost one-half of the taxes, and if the National Bank had continued in business it is probable that this item would have been doubled or fixed at the amount of the taxes at tax-paying time after it had ascertained the correct amount. The trust and savings bank

paid a dividend in 1913, and should have deducted this tax from that dividend just the same as would the National Bank have done had it been in business at tax-paying time and at the time of the declaration of the dividend in 1913. This liability was clearly a liability of the stockholders of the National Bank. Because the National Bank took steps to protect itself against liability for said taxes, and also its officers, in the manner above stated, the taxes did not become its obligation primarily. The Central Trust Company is under no obligation to pay the taxes of the stockholders of the National Bank. The trust and savings bank assumed no obligation to pay such taxes. Its contract was, that it would 'assume all the indebtedness of the National Bank of every kind and agree to pay such indebtedness in the manner and form in which the National Bank agreed to pay the same.' There is no proof of any special agreement to pay these taxes, as the trust and savings bank was only under obligation to the State to pay these taxes, as the National Bank would have done, out of the dividends of the stockholders. Two of the Appellate Court judges erred in including in the liability account of the Central Trust Company $6000, the amount carried on the books of the bank and reserved to pay taxes. The mere fact that this item was carried on the liability side of the account of the National Bank did not make it a real obligation of the bank and consequently not an obligation of the Central Trust Company." In the other case the same question arose and was decided the same way.

Sections 38 and 39 of the act for the assessment of property and for the levy and collection of taxes are as follows:

"Sec. 38. The collector of taxes, and the officer or officers authorized to receive taxes from the collector, may, all or either of them, have an action to collect the tax assessed on any share or shares of bank stock from the avails of the sale of such share or shares; and the tax

against such share or shares shall be and remain a lien thereon till the payment of said tax.

"Sec. 39. For the purpose of collecting such taxes, it shall be the duty of every such bank, or the managing officer or officers thereof, to retain so much of any dividend or dividends belonging to such stockholders as shall be necessary to pay any taxes levied upon their shares of stock, respectively, until it shall be made to appear to such bank or its officers that such taxes have been paid; and any officer of any such bank who shall pay over or authorize the paying over of any such dividend or dividends, or any portion thereof, contrary to the provisions of this section, shall thereby become liable for such tax; and if the said tax shall not be paid, the collector of taxes where said bank is located shall sell said share or shares to pay the same, like other personal property. And in case of sale the provision of law in regard to the transfer of stock when sold on execution shall apply to such sale."

These sections do not authorize the maintenance of this action. They provide a method for the collection of the taxes on the shares of stock. There is no allegation that any dividend has been earned, declared or paid in whole or in part. The collector of taxes is authorized by section 39, if the tax is not paid, to sell the share or shares of stock to pay it as other personal property, and in case of sale the provision of law in regard to the transfer of stock shall apply. This refers to the levy of the tax collector's warrant on the stock in the usual manner in the case of a levy on personal property and its sale in the usual manner of sale. Section 38 has no reference to any sale under section 39 but refers to a suit to enforce the lien on the stock created by the last clause of the section.

The motion of the appellant to find the issues in its favor should have been sustained.

The judgment is reversed. *Judgment reversed.*